**BRINK et al. v. UNITED STATES.**

**No. 6485.**

District Court, D. Massachusetts.

Oct. 6, 1937.

Anthony Brayton of Hale & Dorr, all of Boston, Mass., for plaintiffs.

Donald J. Marran, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Francis J. W. Ford, U. S. Atty., and Arthur L. Murray, Sp. Asst. to U. S. Atty., both of Boston, Mass., on the brief), for the United States.

SWEENEY, District Judge.

This is an action at law to recover a portion of the taxes reported and paid by the plaintiffs for the year 1932, on the theory that a mistake was made in reporting the true income. The defendant denies that the taxes in question were erroneously reported, or illegally assessed, collected, and retained by the United States as alleged by the plaintiffs.

**Findings of Fact.**

The plaintiffs are trustees under/the deed of trust of John J. Meehan, dated May 18, 1928, and, as such, are the only persons interested in the claim set forth in this petition. On March 15, 1933, the plaintiffs filed their return for 1932 income, and under Schedule D disclosed a sale of securities from which they realized the sum of $136,102.26. The cost of these securities was disclosed as $86,262.71, making a capital net gain in the amount of $49,839.55 on which a tax of $6,229.94 was paid. The total tax reported and paid by the plaintiffs, including income from other sources, was $6,329.87. The taxpayers in the first instance reported the figures set out above, and the assessment was made by the collector on the return filed. The tax was actually paid in quarterly payments during 1933.

On October 13, 1934, the plaintiffs filed with the collector a claim for refund which was rejected on May 23, 1935. This suit was commenced in September of 1935.

On January 1, 1932, the plaintiffs, as trustees, were the owners of 682 shares of stock of the Waterproof Paint & Varnish Company. The cost of these shares, computed in accordance with the provisions of the Revenue Act of 1932 (47 Stat. 169), was $86,262.71. On July 15, 1932, the plaintiffs sold this stock in accordance with the terms of a previous agreement to the American Asphalt Paint Company. The original agreement with the American Asphalt Paint Company was entered into by Meehan, the cestui qui trust, who later assigned it to the trustees. All parties assented to this assignment. Meehan had entered into the contract in his own name in the mistaken belief that he was the record owner of the 682 shares of the capital stock of the Waterproof Paint & Varnish Company, whereas, in reality these shares were held by the trust of which the present plaintiffs are trustees. It is significant that in the agreement, which was first entered into between Meehan and the American Asphalt Paint Company, the purchase price to be paid by the American Asphalt Paint Company for the 682 shares of stock of the Waterproof Paint & Varnish Company was set out as $136,400, which was to be paid by $76,400 in cash, and the delivery of 600 shares of the 7 per cent. preferred stock of the American Asphalt Paint Company of the par value of $100 per share, making a total par value of said stock of $60,000.

The American Asphalt Paint Company further agreed to repurchase the 600 shares of preferred stock which it gave as part of the consideration for the purchase of the

Waterproof Paint & Varnish Company stock for $100 per share, if and when tendered for sale by the trustees in the manner following: "thirty (30) shares thereof within six months of the date hereof, and an additional thirty (30) shares in each successive period of six months thereafter until the entire total of 600 shares shall be so repurchased by the second party from the first party."

The trustees were not bound to sell the whole or any part of the shares under this agreement, but had an option to require the American Asphalt Paint Company to repurchase any and all of the shares in the aforesaid manner. There was a further agreement for the employment of Meehan by the American Asphalt Paint Company, but this is of no importance to the present litigation.

Expenses incurred by the taxpayers in connection with the sale of their shares in the Waterproof Paint & Varnish Company, incurred for transfer taxes and other items, were in the amount of $297.74.

The claim for refund on which the present suit is based arose out of an alleged error on the part of the taxpayers in reporting the value of the American Asphalt Paint Company stock received by them as part of the consideration for the purchase price of the 682 shares of stock in the Waterproof Paint & Varnish Company. In their petition the plaintiffs allege that a profit of $49,839.55 was reported in error by the plaintiffs as a capital net gain from the sale of 682 shares of Waterproof Paint & Varnish Company, whereas the correct amount of that profit was but $19,839.55. The petition further alleges that the Commissioner's determination that the profit from the sale of 682 shares of the Waterproof Paint & Varnish Company stock was properly reported as $49,839.55 was erroneous, and resulted in an illegal assessment and collection. The plaintiffs seek judgment in the sum of $3,966.69, because of this error, or for such greater amount as shall be found to have been erroneously collected, with interest.

On June 30, 1932, the net worth of the American Asphalt Paint Company as shown by its books and a balance sheet was $1,349,229.99. On July 15, 1932, the American Asphalt Paint Company was earning and paying its full 7 per cent. dividends on its cumulative preferred stock. After the acquisition of the Waterproof Paint & Varnish Company stock from these plaintiffs, the consolidated net current assets of the American Asphalt Paint Company were in excess of $350,000 as against current liabilities of approximately $125,000, and its consolidated net worth at that time was approximately $1,600,000. It had no funded or bonded indebtedness, and there were outstanding but 3,379 shares of preferred stock. Its net worth of $1,600,000 was the equivalent of an amount in excess of $450 per share of preferred stock. The plaintiffs offered evidence through an expert, of the current market value of the American Asphalt Paint Company cumulative preferred stock as of July 15, 1932, the date of the purchase. The testimony was that the stock had a fair market value of not in excess of $30 per share. As against this alleged value testified to by the expert, we have the financial statements, and the earning sheets of the company submitted for some years prior to and after the alleged purchase. From these records it is shown clearly that the American Asphalt Paint Company from 1930 through 1934, both inclusive, with the exception of the year 1932, when a small net loss occurred, earned its preferred dividends and much more in excess of the amount necessary to pay them, and in many of these years earned and paid dividends on some of its common stock. Up to the time that this suit was brought the plaintiffs have exercised the option contained in the agreement, and the American Asphalt Company has repurchased from the plaintiffs 300 shares of its cumulative preferred stock, and paid therefor the sum of $100 per share in accordance with its agreement, totalling a full payment to the plaintiffs of $30,000. Dividends were received by the plaintiffs at all times, through the year 1934.

The claims of the plaintiffs made and filed in this case are based on the same theory as set forth in the claim for refund, and are adequately described therein.

The gain from the sale by the plaintiffs of 682 shares of Waterproof Paint & Varnish Company stock is the excess of the amount realized therefrom over the cost basis of that stock.

■ The fact that the plaintiffs set a value of $100 per share on the preferred stock of the American Asphalt Paint Company does not preclude them from

showing the true value of such stock at the trial, and receiving a refund of the taxes based on the then said true value.

■ However, the burden of proving that they are entitled to a refund is upon the plaintiffs, and in the light of the following facts:

(a) That the plaintiffs in their agreement with the American Asphalt Paint Company treated the 600 shares of cumulative preferred stock as having a total value of $60,000, or $100 per share; (b) that in 1933 when they filed their income tax they recognized the same value in the stock; (c) that, after the transfer was effected, the finances of the American Asphalt Paint Company were in excellent shape, with net current assets greatly in excess of its net current liabilities; (d) that prior to the sale, it had earned and paid its dividends, and was likely to earn and pay them in the future—I cannot find that they have sustained the burden of proving that the market value of the American Asphalt Paint Company stock was less than the amount reported in their income tax return, and assessed by the Commissioner.

The stock of the American Asphalt Paint Company was not listed on any of the recognized stock exchanges of the country, and its general market value standing alone in 1932 might be difficult of definite ascertainment. In the hands of these plaintiffs, however, either coupled with the agreement on the part of the American Asphalt Paint Company to repurchase, or without such agreement, it had a value which these parties themselves placed upon it. Later events served only to confirm their judgment of the stock's 1932 value.

These facts, coupled with the fact that in later years the American Asphalt Paint Company continued to earn and pay its full 7 per cent. dividends, and actually repurchased stock from the plaintiffs at par, negatives any suggestion that the value of the American Asphalt Paint Company stock on July 15, 1932, was any less than the value reported to the Commissioner.

### Conclusions.

I therefore find that the plaintiffs have failed to sustain the burden of proving that the tax assessed by the Commissioner was illegal or erroneously assessed.

The defendant's motion for judgment is therefore allowed, with costs. The plaintiffs' motions for judgment are denied, and the plaintiffs' requests for rulings are denied, except in so far as they are incorporated herein.